UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------X

GEORGE HINES, M.D., HELENE HINES,
and JENNIFER HINES,

               **Plaintiffs,**

    - against -

1025 FIFTH AVENUE INC.,

               **Defendant.**
-----------------------------------------------------X

**USDC SDNY**
**DOCUMENT**
**ELECTRONICALLY** FILED
DOC #: _____
DATE FILED: _6|30|15_

**OPINION AND ORDER**

**14-cv-3661 (SAS)**

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.   INTRODUCTION

In May 2014, George, Helene, and Jennifer Hines (the "Hineses")
brought this action against 1025 Fifth Avenue Inc. (the "Co-op") asserting
discrimination claims under the Fair Housing Act ("FHA"), the New York State
Human Rights Law, the New York City Human Rights Law ("NYCHRL"), and the
New York City Administrative Code (the "Discrimination Laws").  They sought
both injunctive relief and damages, and demanded a trial by jury.  In February
2015, I granted the Co-op's motion to strike the Hineses' jury demand (the
"Motion to Strike").  On April 17, 2015, the parties entered into a stipulation of
settlement (the "Settlement").  Plaintiffs now move for attorney's fees and costs
under the FHA and NYCHRL.  Specifically, plaintiffs seek fees of $288,541.35

and costs in the amount of $6,702.69 for the work of their attorney, James E. Bahamonde, a North Bellmore, solo-practitioner.  For the following reasons, plaintiffs are awarded fees of $118,037.50 and costs of $6,702.69.

## II.   BACKGROUND[1]

### A.   The Underlying Litigation

In 2001, Helene and George Hines purchased and moved into a one-bedroom co-op apartment owned by 1025 Fifth Avenue, Inc. (the "Co-op").[2] George and Helene identified themselves as co-applicants and both were interviewed by the Co-op's Board of Directors.[3]  As part of their application, they listed the names and ages of their children, Brian Hines and Jennifer Hines.[4] Additionally, both George and Helene signed an acknowledgment that they had read the House Rules of the Co-op and that they understood the pet policy.[5]  After

---

[1]      A significant portion of this "Background" is taken verbatim from the Opinion and Order issued in connection with the Motion to Strike.  *See Hines v. 1025 Fifth Ave., Inc.*, No. 14 Civ. 3661, 2015 WL 765943, at *1-2 (S.D.N.Y. Feb. 23, 2015).

[2]      *See* First Amended Complaint ("FAC") ¶ 38.

[3]      *See id.*; Additional Information, Ex. A to Declaration of Steven Barshov in Support of Defendant's Motion to Strike Plaintiffs' Jury Trial Demand ("Barshov Decl.").

[4]      *See* Additional Information.

[5]      *See* Letter to the Board of Directors, Ex. D to Barshov Decl.

2

the Board's approval, Helene and the Co-op executed a Proprietary Lease (the "Lease"), dated August 14, 2001 and extending through September 30, 2050.[6]

The Lease identifies Helene Hines as the Lessee.[7]  Among other things, it includes a covenant related to the use of the premises, and provides: "The Lessee shall not occupy or use the apartment, or permit the same or any part thereof to be occupied or used, for any purpose other than as a private dwelling apartment for the Lessee[] [and] the family and servants of the Lessee . . . ."[8]  The Lease does not permit subletting without the Co-op's written consent.[9]  The Lease also provides a procedure for the assignment of the Lease, which includes a requirement of written consent from either the Board of Directors or lessees owning a majority of the capital stock in the Co-op.[10]  The Lease specifies that "the covenants herein contained shall apply to, bind and enure to the benefit of the Lessor and its successors and assigns, and the Lessee and the executors and administrators, legal representatives, legatees and assigns of the Lessee, except as

---

[6]     *See* Lease, Ex. B to Barshov Decl., at 5.

[7]     *See id.*

[8]     *Id.*

[9]     *See id.* at 10.

[10]     *See id.*

3

hereinbefore stated."[11]  Finally, the Lease provides for a waiver of trial by jury:

> It is mutually agreed by and between the Lessor and the Lessee that the respective parties hereto shall and they hereby do waive trial by jury in any action, proceeding or counterclaims brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this lease, the Lessee's use or occupancy of the apartment, or any claim of damage resulting from any act or omission of the parties in any way connected with this lease or the apartment.[12]

The jury waiver appears on the last page of the Lease, which is also the signature page containing the signatures of the Co-op's representatives, Helene Hines, and Kathy Reitman, the Hines's attorney, as a witness.[13]

In or around 2010, Jennifer Hines moved into the apartment with her parents due to health concerns.[14]  George and Helene renovated the apartment to create a second bedroom for Jennifer.[15]  Both Helene and Jennifer keep service dogs, and Jennifer keeps an emotional support dog as well.[16]  These dogs assist Helene and Jennifer with the management of their diseases.  Starting in or around

---

[11]    *Id.* at 22.

[12]    *Id.*

[13]    *See id.*

[14]    *See* FAC ¶ 44.

[15]    *See id.*

[16]    *See id.* ¶¶ 35, 42–43.

4

2013, the presence of the dogs, as well as the placement of Helene's car, became a source of conflict between the Hineses and the Co-op.[17]

On May 21, 2014, the Hineses commenced this action against the Co-op, alleging that the Co-op discriminated against the Hineses on the basis of their disabilities, and refused to make reasonable accommodations.  The Hineses sought the following relief:

1.  A declaratory judgment that defendant's conduct violated the Discrimination Laws;

2.  An injunction preventing defendant from discriminating on the basis of disability against any persons in violation of the Discrimination Laws, including by (a) making notices or statements, with respect to the lease of a dwelling that indicate a preference, limitation, or discrimination based on disability, (b) denying a dwelling because of disability, (c) providing inferior terms, conditions, or privileges because of disability, (d) aiding, abetting, coercing, intimidating and discriminating based on disability, (e) refusing to make reasonable accommodations, (f) restricting assistance animals from using the passenger elevator, and (g) conditioning a reasonable accommodation upon a disabled person agreeing to be provided inferior services, privileges, and use of the facilities;

3.  An injunction further requiring defendant to (a) modify its Pet Permission Form so that it does not have a disparate impact, (b) make all necessary modifications to its policies, practices, and procedures to comply with the Discrimination Laws, (c) train all management, agents, and employees on fair housing laws, (d) and reactivate the

---

[17]    *See id.* ¶¶ 55–78.

Lease between plaintiffs and defendant;

4.    Compensatory damages; and

5.    Punitive damages.[18]

On August 5, 2014, defendant filed an Answer to the FAC, which asserted a counterclaim for breach of the Lease.  The parties then engaged in discovery, which included document requests, sixteen depositions, and a motion to compel.[19]  On February 23, 2015, I granted the Motion to Strike the Jury Demand. On April 15, 2015, the parties entered into a Stipulation and Settlement, resolving all but one of the disputes between the parties (the "Settlement").  That dispute was later resolved with the Court's assistance at a conference held on May 27, 2015.

Under the terms of the Settlement, defendant agreed to pay plaintiffs reasonable attorney's fees and costs in an amount to be determined by the Court, as well as $50,000 in damages.[20]  Defendant also agreed to withdraw all notices to quit and terminate, allow plaintiffs to remain in their apartment with their assistance dogs, and amend its common area and pet policies to permit plaintiffs to

---

[18]    *See id.* Wherefore Clause ¶¶ A-G.

[19]    *See* 5/5/15 Declaration of James E. Bahamonde, plaintiffs' counsel, in Support of Plaintiffs' Motion for Attorney's Fees and Costs ("Bahamonde Decl."), ¶ 27.

[20]    *See id.* ¶ 8.

6

be accompanied by their assistance dogs on the passenger elevators.  In addition,
defendant agreed to provide notice to all Co-op shareholders that Helene and
Jennifer Hines are entitled by law to take their assistance dogs on the passenger
elevator, and that Helene Hines is permitted to park her vehicle in the "No
Parking" zone abutting the building's entryway because of her specialized
handicap parking permit.  Finally, defendant agreed to keep confidential the
medical information disclosed by plaintiffs during this litigation.[21]

###### B.    The Instant Motion for Attorney's Fees and Costs

Plaintiffs seek fees of $288,541.35 based on 723.5 hours of
Bahomonde's time.  Bahamonde charged plaintiffs an hourly rate of $415, except
for his travel fees which he billed at $207.50.  In addition, plaintiffs seek an award
of costs and expenses of $6,702.69.

## III.    LEGAL STANDARD

District courts are afforded considerable discretion in determining the
amount of reasonable attorney's fees in any given case.[22]  In addition, "the fee
applicant bears the burden of establishing entitlement to an award and

---

[21]    *See id.* ¶ 7.

[22]    *See Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011)
(stating that district courts' discretion in awarding fees is not "unfettered");
*LeBlanc-Sternberg v. Fletcher*, 143 F.3d 748, 758 (2d Cir. 1998) ("The district
court retains discretion to determine . . . what constitutes a reasonable fee.").

documenting the appropriate hours expended and hourly rates."[23]

### A.    Lodestar

The prime methodology to be used in determining the amount of attorney's fees is the "lodestar" approach.  The Supreme Court has endorsed the "lodestar" approach as the superior method to be used in determining attorney's fees, describing it as "'the guiding light of . . . fee-shifting jurisprudence.'"[24] Moreover, there is a "strong" presumption that "the lodestar method yields a fee that is presumptively sufficient to achieve this objective."[25]

The lodestar is the product of the attorney's reasonable hourly rates multiplied by the reasonable number of hours worked by the attorneys.[26]  "The reasonable hourly rate is the rate a paying client would be willing to pay."[27]  In determining the reasonable hourly rates to be applied, courts should look to the market rates "'prevailing in the community for similar services by lawyers of

---

[23]    *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

[24]    *Gisbrecht v. Barnhart*, 535 U.S. 789, 801 (2002) (internal quotation marks omitted).

[25]    *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 552 (2010).

[26]    *See Millea*, 658 F.3d at 166.

[27]    *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany Cnty. Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008).

reasonably comparable skill, experience, and reputation.'"[28]  In sum, in

determining a reasonable hourly rate, courts "should bear in mind that a

reasonable, paying client wishes to spend the minimum necessary to litigate the

case effectively."[29]

In determining the appropriate hourly rate, courts "may adjust the

base hourly rate to account for other case-specific variables."[30]  These variables

include twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*:[31] (1)

the time and labor required; (2) the novelty and difficulty of the questions; (3) the

skill requisite to perform the legal service properly; (4) the preclusion of

employment by the attorney due to acceptance of the case; (5) the customary fee;

(6) whether the fee is fixed or contingent; (7) time limitations imposed by the

client or the circumstances; (8) the amount involved or the results obtained; (9) the

experience, reputation, and ability of the attorneys; (10) the undesirability of the

case; (11) the nature and length of the professional relationship with the client; and

---

[28]     *Gierlinger v. Gleason*, 160 F.3d 858, 882 (2d Cir. 1998) (quoting *Blum v. Stenson*, 465 U.S. 886, 896, n.11 (1984)).

[29]     *Arbor Hill*, 522 F.3d at 190.

[30]     *Id.* at 184.

[31]     488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87, 92-93 (1989).

(12) awards in similar cases.[32]  The court need not "recite and make separate

findings as to all twelve *Johnson* factors."[33]

### B.    Proportionality

There is no rule requiring proportionality between the amount of fees

requested and the damages recovered.  The Second Circuit has stated:

> While a court may, in exceptional circumstances, adjust the
> lodestar, it may not disregard it entirely.  Especially for
> claims where the financial recovery is likely to be small,
> calculating attorneys' fees as a proportion of damages runs
> directly contrary to the purpose of fee-shifting statutes:
> assuring that civil rights claims of modest cash value can
> attract competent counsel. The whole purpose of
> fee-shifting statutes is to generate attorneys' fees that are
> *disproportionate* to the plaintiff's recovery.  Thus, the
> district court abused its discretion when it ignored the
> lodestar and calculated the attorneys' fees as a proportion
> of the damages awarded.[34]

"Reasoning that a rule calling for proportionality between the fee and the monetary

amount involved in the litigation would effectively prevent plaintiffs from

obtaining counsel in cases where deprivation of a constitutional right caused injury

of low monetary value, [courts] have repeatedly rejected the notion that a fee may

be reduced merely because the fee would be disproportionate to the financial

---

[32]    *See Arbor Hill*, 522 F.3d at 186 n.3 (citing the *Johnson* factors).

[33]    *Lochren v. County of Suffolk*, 344 Fed. App'x 706, 709 (2d Cir. 2009).

[34]    *Millea*, 658 F.3d at 169 (citation omitted, emphasis in original).

10

interest at stake in the litigation."[35]

## C.    Degree of Success

It is often said that "'the most critical factor' in a district court's determination of what constitutes reasonable attorney's fees in a given case 'is the degree of success obtained' by the plaintiff."[36]  "Hours spent on unsuccessful fee-shifting claims, like those spent on claims wholly ineligible for fee-shifting, must be excluded from the reasonable hours spent on the case when calculating the lodestar."[37]  As recognized by the Supreme Court, where

> a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount.  This will be true even where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith. Congress has not authorized an award of fees whenever it was reasonable for a plaintiff to bring a lawsuit or whenever conscientious counsel tried the case with devotion and skill.  Again, the most critical factor is the degree of success obtained.[38]

---

[35]    *Kassim v. City of Schenectady*, 415 F.3d 246, 252 (2d Cir. 2005) (citing cases).

[36]    *Barfield v. New York City Health and Hosps. Corp.*, 537 F.3d 132, 152 (2d Cir. 2008) (quoting *Farrar*, 506 U.S. at 114).

[37]    *Millea*, 658 F.3d at 168.

[38]    *Hensley*, 461 U.S. at 436.

## IV.   DISCUSSION

### A.   Attorney's Fees

In a case that lasted less than a year, involved a single, non-dispositive motion, and settled before trial, plaintiffs seek to recover $288,541.35 in attorney's fees based on 723.5 hours billed by a single attorney.  While plaintiffs are entitled to reasonable attorney's fees, the amount demanded far exceeds the outer bounds of what is reasonable and therefore requires a significant reduction.

#### 1.   Reasonable Rate

Plaintiffs seek a fee award based on an hourly rate of $415. Defendant argues that this is an unreasonable rate for Bahamonde, a solo practitioner with twelve years of legal experience in the fields of housing and disability discrimination.[39]  Defendant contends that Bahamonde's customary rate is closer to $345, because Bahamonde sought that amount in a September 2014 case under the Americans with Disability Act.[40]  According to Defendant, $360 is a reasonable fee in this case.  Plaintiffs respond that Bahamonde charges a lower

---

[39]   *See* Defendant's Memorandum of Law in Response to Plaintiffs' Motion for Attorney's Fees and Costs ("Def. Mem."), at 3.

[40]   *See id.* at 3-4.  In 2013, Bahamonde sought fee awards based on a rate of $325 per hour in cases arising under federal and state civil rights law.  *See Shariff v. Alsaydi*, No. 11 Civ. 6377, 2013 WL 4432218, at *5 (E.D.N.Y. Aug. 15, 2013); *Shariff v. Beach 90th St. Realty Corp.*, No. 11–cv–2551, 2013 WL 6835157, at *6 (E.D.N.Y. Dec. 20, 2013).

hourly rate for cases under the ADA than under the FHA because lawsuits alleging housing discrimination are far more difficult than ADA cases.

A rate between $325 and $360 is far more consistent with Bahamonde's thirteen years of experience[41] and his ability than the $415 he seeks in this case.  *First*, while Bahamonde claims that he "regularly charges clients on the hourly-fee basis of $415 an hour" and his "present customary hourly rate for representations of housing discriminations cases [*sic*] filed under the Fair Housing Act, litigated in the Southern District of New York, is $415 per hour," he has not offered any proof beyond his self-serving declaration — such as retainer agreements or court papers approving that fee — to support that assertion.[42]  A review of the Court's CM/ECF system indicates that Bahamonde has been an attorney in ten cases, including this one, in the Southern District of New York.[43]  Five of those cases, including this one, were brought under the FHA.  The results in these cases are mixed.  One was dismissed on summary judgment, one was

---

[41]     Bahamonde graduated from Maurice A. Deane School of Law at Hofstra University in May 2001, and then worked at GEICO Insurance Company from December 2001 to December 2002.  He "began focusing on civil rights cases" in December 2002, and established his practice in March 2003.  Bahamonde Decl. ¶¶ 18-23.

[42]     *Id.* ¶¶ 11-12.

[43]     In three of those cases, he represented Helene Hines.

voluntarily dismissed, one resulted in a settlement which did not involve a court determination of legal fees, and the other remains pending.  None of these cases reveal what rate Bahamonde customarily charges.

*Second*, even assuming that FHA cases typically warrant a higher fee than ADA cases, that does not mean that it was reasonable for Bahamonde to charge $415 in this particular housing discrimination case or that an attorney of Bahamonde's experience could charge that rate.  Tellingly, Bahamonde has over-litigated this case while at the same time failing to exercise billing discretion.  Perhaps a more experienced attorney would not have made these mistakes.  Accordingly, for these reasons, and based on the skill, experience, and the quality of Bahamonde's work, the appropriate hourly rate in this case is $350.[44]  This amount is consistent with what courts have permitted on fee applications in this district.[45]

------

[44]    The fee application itself is indicative of the quality of Bahamonde's work.

[45]    *See, e.g.*, *Charles v. City of New York*, No. 13 Civ. 3547, 2014 WL 4384155, at *4 (S.D.N.Y. Sept. 4, 2014) (reducing requested hourly rate of attorney with twenty-four years of experience in civil rights litigation from $500 to $450); *Davis v. City of New York*, No. 10 Civ. 699, 2011 WL 4946243, at *4-5 (S.D.N.Y. Oct. 18, 2011) (holding that $350 was reasonable rate for NAACP Legal Defense & Educational Fund, Inc. attorney with eleven years of experience in highly complex civil rights action involving multiple plaintiffs and putative class) (citing *Handschu v. Special Servs. Div.*, 727 F. Supp. 2d 239, 246 (S.D.N.Y. 2010) approving $400 per hour for seasoned civil rights attorneys admitted to the bar in

## 2.    Reasonable Number of Hours

Plaintiffs bear the burden of establishing the reasonableness of the hours billed.  Bahamonde has billed 723.5 hours of work on this case.  That amount is absurd on its face.[46]  However, plaintiffs have failed to put forth a cogent demonstration of the difficulties inherent in this case justifying that amount of work.  Furthermore, plaintiffs have failed to summarize, organize, or categorize Bahamonde's billing records to assist the Court in analyzing the time spent throughout the various stages of this litigation.  Instead, plaintiffs give minimal effort when describing this case, overtly overstate the tasks involved, and fail, even in broad strokes, to indicate how much time was spent per project.

the 1960s and 1970s)).

[46]    If Bahamonde spent that much time on each matter a year, he could only take on *three* simple, non-trial cases a year.  *See Simmonds v. New York City Dep't of Corrections*, No. 06 Civ. 5298,  2008 WL 4303474, at *7 (S.D.N.Y. Sept. 16, 2008) (citing *DiFilippo v. Morizio*, 759 F.2d 231, 235-26 (2d Cir. 1985) finding 302 hours to litigate the matter to trial to be grossly excessive because "[i]f a self-employed lawyer were to work extremely hard and bill 2100 hours annually on the same basis as plaintiffs' counsel here, his or her entire practice would consist of only seven simple cases such as this each year.").  At that rate, Bahamonde would have worked on 37.5 cases in his career, although he claims to have "litigated nearly 200 housing and disability discrimination actions" in the twelve years and five months between December 1, 2002, when he started working on civil rights cases, and May 5, 2015, when he filed the fee application.  Bahamonde Decl. ¶¶ 22-23.  Assuming the unrealistic scenario in which Bahamonde *billed* ten hours per day, every day excluding holidays and weekends, but never taking any vacation or sick days, he could only average 155 hours per case while litigating 200 cases.

For example, to justify the amount of time spent on discovery — not that plaintiffs bother to provide the total amount of time spent on discovery — Bahamonde states: "[d]iscovery in this matter consisted [of] numerous discovery requests, 16 deposition[s], Plaintiffs' motion to compel, Plaintiffs' motion for attorneys fees and costs, and Defendant's motion to strike the jury demand" and "[b]ecause Plaintiffs' claims were hard-fought and contentious, it took a tremendous effort by parties' counsel, which included hundreds of emails and voice communcations."[47]  Plaintiffs also claim that "in view of the discovery that took place in the underlying action, the time claimed is completely reasonable. Here, there were a total of 16 depositions and three motions."[48]  Whatever these descriptions mean, they do not provide sufficient detail to meet plaintiffs' burden of showing this Court that there was anything particularly difficult about this case.[49]

---

[47]     Bahamonde Decl. ¶¶ 27-28.

[48]     Memorandum of Law in Support of Plaintiffs' Motion for Attorneys Fees and Costs at 10.

[49]     Plaintiffs also play fast and loose when characterizing the motion practice in this case.  There were two motions in this case, the Motion to Strike and the present fee application.  Plaintiffs might be counting as a motion their ill-advised request for a pre-motion conference on a motion to compel, filed on December 4, 2014.  The record demonstrates that Bahamonde wasted at least 6.4 hours drafting and filing the letter rather than first attempting in good faith to resolve it with his adversary as required by my rules.  *See* Docket Nos. 23, 25.  It

The problem for plaintiffs is that based on my review of the record, this was a wholly unremarkable discrimination case.  The big issues were whether Helene and Jennifer Hines, two disabled tenants of a Co-Op, could bring their assistance dogs on the passenger elevator, and whether Helene Hines could park her car in the "No Parking" zone abutting the building's entryway.  Not surprisingly, the case settled in less than year with the Co-Op making some concessions and paying some damages.  Its hard to imagine that the modest outcome here was not within reach earlier in the case.

Thus, neither the complexity nor the results in this case could possibly justify the time spent.  Rather, in order to expend 723.5 hours for this case, Bahamonde spent far too much time on discrete projects, over-litigated matters, and otherwise failed to exercise billing judgment.  For example, at the very beginning of the case, Bahamonde billed 67.2 hours drafting the complaint and communicating with plaintiffs about it.   This amount of time is unreasonable for a 27-page document that includes boilerplate.[50]  This is especially true based on

also seems likely that plaintiffs are improvidently categorizing as motions the short letters that were filed requesting adjournments of certain discovery dates.  But clearly the fact of having filed these letters does not suggest that this case involved the type of complexity which could necessitate hundreds of hours of attorney time.

[50]     *See, e.g.*, *Simmonds*, 2008 WL 4303474, at \*7 (finding 97.83 hours for initial intake, drafting the complaint, and meetings and e-mails with the client regarding 43-page complaint, was unreasonable); *Lynch v. Town of Southampton*,

Bahamonde's experience drafting the complaints in the four actions in the

Southern District mentioned above, litigating "nearly 200 housing and disability

discrimination actions,"[51] which presumptively includes drafting complaints, and

representing Helene Hines in several actions concerning the use of her support

dogs in retail establishments.[52]

Plaintiffs claim that Bahamonde *only* spent 58.2 hours drafting the

complaint,[53] but even 58.2 hours is far too much time for a 27-page complaint.

Plaintiffs further contend that this amount of time is justified because

> this case sets forth a thirteen year fact pattern comprising
> hundreds of documents, the respective medical histories of
> Plaintiffs Helene Hines and Jennifer Hines, Defendant's repeated
> refusal to provide Plaintiffs with a number of reasonable
> accommodations, along with analysis in formulating each claim
> asserted by Plaintiffs. Even a cursory review of the Compliant

---

492 F. Supp. 2d 197, 213 (E.D.N.Y. 2007) (93 hours for a 43-page complaint
found unreasonable); *Jennette v. City of New York*, 800 F. Supp. 1165 (S.D.N.Y.
1992) (24 hours for 21 page complaint found to be reasonable).

[51]     Bahamonde Decl. ¶ 23.

[52]     *See* Def. Mem. at 8. There are, of course, more examples of over
billing in this case, including the fact that Bahamonde billed over 40 hours between
May 21 and May 26, 2015 on just his reply in support of the instant motion for
attorney's fees. *See* 5/26/15 Supplemental Billing Report, Ex. 4 to Reply
Declaration of James E. Bahamonde in Further Support of Plaintiffs' Motion for
Attorney's Fees and Costs ("Bahamonde Reply Decl.").

[53]     *See* Reply Memorandum of Law in Further Support of Plaintiffs'
Motion for Attorneys Fees and Costs at 6.

18

[*sic*] illustrates that the circumstances underlying Plaintiffs' claims are fact intensive and based on an extensive amount of research.[54]

The impression given by a cursory review of the FAC aside, plaintiffs' argument proves too much.  Under the FHA, plaintiffs were only required to "satisfy [Federal Rule of Civil Procedure] Rule 8(a)'s standard of a short and plain statement of the claim showing" entitlement to relief.[55]  Nothing was achieved by tracing thirteen years and adding layers of detail when it is evident that "amplification [was not] needed to render the claim[s] plausible."[56]

There are far greater problems in plaintiffs' application than the time spent on the complaint.  Even if Bahamonde only spent 58.2 and not 67.2 hours drafting the complaint — or 31.7 and not 32.8 hours drafting a motion for a temporary injunction and restraining order that was never filed,[57] or 25.6 hours and not 49.4 hours drafting opposition to defendant's successful motion to strike the

---

[54]      *Id.*

[55]      *Boykin v. KeyCorp*, 521 F.3d 202, 213 (2d Cir. 2008) (internal quotation marks omitted).

[56]      *Id.* (internal quotation marks omitted).

[57]      The parties dispute whether there was any point in drafting this motion.  The overwhelming sense I get from reading the papers is that Bahamonde failed to communicate with opposing counsel on this issue.

jury demand,[58] or some unspecified amount of time less than 29 hours drafting a six-page letter to Magistrate Judge Kevin Nathaniel Fox for the purposes of settlement discussions — he still spent 723.5 hours for this case.  How is that possible?  Of course, it was plaintiffs' burden to justify the expenditure of that amount of time and they have not.  Given the amount of time billed in this case — and the fact that many of the billing entries included in the initial 80-page billing report describe multiple tasks[59] — plaintiffs should have at least provided ballpark figures or a percentage for the major tasks in this case.

But perhaps this failure was intentional.  The sum of the low-end

---

[58]     Bahamonde managed to bill at least 49 hours to produce opposition papers that consisted of a sixteen-page memorandum of law and three one-page declarations.  *See, e.g.*, Billing Report For Professional Services Rendered, Ex. 1 to Bahamonde Decl., at 46 (1/10/15 2.5 hours), 47 (1/11/15 4.9 hours; 1/12/15 2.9 hours), 49 (1/16/15 5.9 hours; 1/17/15 4.1 hours), 50 (1/18/15 6.0 hours; 1/21/15 6.6 hours; 1/22/15 3.4 hours), 51 (1/23/15 2.2 hours; 1/24/15 7.0 hours; 1/25/15 3.3 hours; 1/26/15 .9 hours).  This time deserves no compensation.  The Jury Waiver provision of the Lease was unambiguous.  Bahamonde wasted everyone's time by not conceding this point and forcing defendant to file a formal motion.

[59]     For example, defendant's counsel points out that there are 69 entries indicating time spent on "internal memos," "on topics ranging from opposing counsel's Notice of Appearance and this Court's scheduling order to phone calls with his clients and third-parties," and that the entries are included with other entries so that it is unclear how much time was devoted to their preparation.  Def. Mem. at 10.  Bahamonde's response to this is that "internal memo simply means that Mr. Bahamonde drafted several notations on the subject either to refresh his memory, the impression he had of a conversation, or that something required follow-up action."  Bahamonde Reply Decl. ¶ 44.

numbers suggested by plaintiffs above — 58.2 (the complaint), 31.7 (drafting an unfiled motion), 25.6 (drafting opposition to the motion to strike) — plus the 29 hours for the submission to Magistrate Judge Fox, and the roughly 40 hours on the reply in support of the instant fee application, is 184.5 hours.  To that I will add additional amounts of time allocated to tasks as described by defendant — 2.7 hours on a retainer agreement and statement of clients' responsibilities[60] and 77 hours communicating with plaintiffs — as well as the 22.6 hours I calculate Bahamonde to have billed on the initial papers in support of the instant fee application.[61]  That totals to 102.3 hours, which added to 184.5 hours, comes to 286.8.  That means that even with all these major events in this litigation taken into consideration, Bahamonde must still account for 436.7 additional hours divided

---

[60]     There does not appear to be any justification for why Bahamonde billed 2.7 hours on these tasks considering his previous representations of Helene Hines.  While 2.7 hours seems like a trivial amount of time, at a purported hourly rate of $415, tiny increments of time quickly add up to large sums of money. Indeed Bahamonde's repeated failure to exercise billing judgment ensured that these tiny increments of time added up.  For example, on December 3, 2014 he charged $83 for .2 hours billed for "Review notice of electronic filing and court order adjourning settlement conference; calendar conference," and on both July 31, 2014 and January 15, 2015, Bahamonde billed .1 hours or $41.50 for reviewing docket entries indicating a conference had been held.  Quite apart from the fact that it should not take someone twelve minutes to read a one-sentence order and add a date to a calendar, I question Bahamonde's judgment in even billing for this time.

[61]     In other words, Bahamonde has spent at least 62.6 hours on his fee application alone.

among a handful of court conferences, including the one-day settlement conference before Magistrate Judge Fox, discovery, settlement discussions, and miscellaneous items.  There is just no way to reasonably allocate that amount of time across these tasks.[62]

Accordingly, I find that a fifty (50) percent reduction in the total number of hours expended is necessary to correct for excessive billing, over litigation, and counsel's utter failure to exercise billing judgment.   The fact that the attorney's fees are provided for by statute is not a license for either undisciplined prosecution of a case or unfettered billing practices.  Fifty percent of 674.5[63] hours is 337.25, which at $350 per hour, results in an attorney's fee award of $118,037.50.[64]

---

[62]   For example, it turns out the eleven depositions taken by Bahamonde were taken over the course of five days and totaled 17.7 hours.  *See* Bahamonde Reply Decl. ¶¶ 21-31.  Oddly, Bahamonde billed 26.8 hours for this time.  *See* Sur-Reply Declaration of Steven Barshov in Opposition to Plaintiffs' Motion for Attorneys Fees and Costs ¶ 4.

[63]   I calculate this number by subtracting from the 723.5 hours billed the time Bahamonde spent preparing plaintiffs' ill-advised opposition to defendant's Motion to Strike the Jury Demand, which I calculate to be at least 49 hours.

[64]   Bahamonde billed a certain amount of travel time, including travel from his offices in North Bellmore to New York City for conferences and to visit his clients.  Bahamonde is entitled to reasonable travel time at half his hourly rate.  However, as I have already reduced the hours expended by fifty percent, I find no need to calculate travel time separately.

**B.     Costs**

By contrast to plaintiffs' request for fees, their claim for costs is well documented and seems reasonable in light of the circumstances. Accordingly, defendant's objections are overruled and the full amount of costs is awarded.

**V.     CONCLUSION**

For the foregoing reasons, plaintiffs are awarded $118,037.50 in fees and $6,702.69 in costs. The Clerk of the Court is directed to close this motion [Docket No. 47]. Plaintiffs are directed to submit a revised judgment reflecting the award of the attorney's fees and costs.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 30, 2015

## – APPEARANCES –

**Counsel for Plaintiffs:**

James E. Bahamonde, Esq.
The Law Offices of James E. Bahamonde, P.C.
2501 Jody Court
North Bellmore, NY 11710
(516) 783-9662

**Counsel for Defendant:**
Steven Barshov, Esq.
Sive, Paget & Reisel, P.C.
460 Park Avenue
New York, NY 10022
(212) 421-2150